***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rideout. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rideout with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff and the employer at all times relevant to this claim.
3. Plaintiff was out of work from February 11, 2005 until May 24, 2005.
4. The average weekly wage is $1,055.11, which yields a weekly compensation rate of $703.44.
5. Plaintiff received Sickness Accident benefits during the time he was out of work. Plaintiff received the following gross Sickness 
Accident payments during that period of time: $171.42 for the week ending February 13, 2005; $399.98 for the week ending February 10, 2005; $399.98 for the week ending February 27, 2005; $400.04 for the week ending March 6, 2005; $400.00 for the week ending March 13, 2005; $400.00 for the week ending March 20, 2005; $400.00 for the week ending March 27, 2005; $400.00 for the week ending April 3, 2005; $400.00 for the week ending April 10, 2005; $400.00 for the week ending April 17, 2005; $400.00 for the week ending April 24, 2005; $400.00 for the week ending May 1, 2005; $410.00 for the week ending May 8, 2005; $410.00 for the week ending May 15, 2005; $410.00 for the week ending May 22, 2005; and $58.57 for May 23, 2005. The parties agree that defendants are entitled to a credit in the amount of 75% of the gross Sickness 
Accident benefits to be credited against any workers' compensation indemnity benefits to which plaintiff is due.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-two years old. Plaintiff began building truck tires for Goodyear on July 14, 1997. He has built truck tires during his entire career at Goodyear.
2. In an 8-hour shift, plaintiff builds approximately 130 truck tire carcasses, weighing an average of 33 pounds each. After each truck tire carcass is built, plaintiff pulls the carcass off of the drum of the tire building machine. The tire carcasses often stick to the drum. When a tire carcass sticks, the tire builder has to grab it and yank on it and tug on it and wiggle it until it comes off of the drum.
3. Building truck tires also requires regularly pushing and pulling heavy equipment. During each shift plaintiff has to push, pull and maneuver into place multiple dollies, A-frames and carcass trucks that range in weight from 200 to 600 pounds. While the dollies, A-frames and carcass trucks have wheels, their wheels are often not well maintained, the wheels are not greased, the bearings are bad or the rubber shields have come off. This makes them more difficult to push, pull and maneuver.
4. In addition to pushing and pulling heavy equipment, plaintiff lifts heavy items at work on a regular basis. This includes lifting spools of fabric liner and assisting co-workers with lifting rolls of inner liner and other tire building components.
5. During his 8-hour shift that started at 11 p.m. on February 9, 2005 and ended at 7 a.m. on February 10, 2005, plaintiff noticed a "bump" on his rectum. He worked the entire shift, but subsequently decided to take a vacation day instead of working his next regularly scheduled shift. *Page 4 
6. After leaving work at 7 a.m. on February 10, 2005, plaintiff went home, took a shower, soaked his rectal area in the hopes that the bump would go down, and rested. The bump failed to improve and became more painful by February 11, 2005. Therefore, plaintiff went to an urgent care facility on the morning of February 11, 2005.
7. Plaintiff was examined by a physician's assistant at the urgent care facility. The physician's assistant diagnosed plaintiff with a thrombosed hemorrhoid and performed an incision and drainage procedure to treat the hemorrhoid. The urgent care provider took plaintiff out of work from February 11, 2005 until February 18, 2005.
8. Plaintiff returned to the urgent care on February 18, 2005 with continuing symptoms. At this time, he was referred to a surgeon and his out-of-work status renewed.
9. Dr. F. Andrew Morfesis, M.D., a board-certified general surgeon, examined plaintiff on February 23, 2005. Dr. Morfesis determined that plaintiff's thrombosed hemorrhoid should be excised surgically. On March 4, 2005, Dr. Morfesis excised plaintiff's thrombosed hemorrhoid. At the time of the surgery, plaintiff's hemorrhoids were getting worse and at risk of recurring and requiring additional surgery.
10. Heavy manual labor, including heavy lifting, is a risk factor for the development of a thrombosed hemorrhoid. Other risk factors for the development of a thrombosed hemorrhoid are pregnancy and constipation. Plaintiff is a male, thus ruling out pregnancy as a risk factor. In addition, there is no evidence that plaintiff had a history of constipation prior to the development of his thrombosed hemorrhoid. The greater weight of the competent evidence of record indicates that plaintiff's only risk factor for the development of a thrombosed hemorrhoid was the heavy manual labor he did at work. *Page 5 
11. Dr. Morfesis testified that the fact that plaintiff experienced more pain while he was at home on February 11, 2005 is consistent with his thrombosed hemorrhoid having been caused by him doing heavy manual labor at work during his shift beginning at 11 p.m. on February 9, 2005 and ending at 7 a.m. on February 10, 2005.
12. Dr. Morfesis opined, and the Full Commission finds, that plaintiff's job duties as a truck tire builder placed him at an increased risk for developing a thrombosed hemorrhoid as compared with members of the general public not equally exposed.
13. Dr. Morfesis opined, and the Full Commission finds, that plaintiff's job duties as a truck tire builder made a significant contribution to the development of his thrombosed hemorrhoid.
14. The greater weight of the evidence shows that as a result of plaintiff's heavy manual labor, including heavy lifting to perform his job duties for defendant-employer, plaintiff developed a thrombosed hemorrhoid.
15. The greater weight of the evidence shows that plaintiff's employment placed him at an increased risk for developing the occupational disease of thrombosed hemorrhoid compared to members of the general public not so employed.
16. While Dr. Duberman opined that plaintiff's thrombosed hemorrhoid was caused by either heavy lifting or constipation, plaintiff did not have a history of constipation prior to the development of his thrombosed hemorrhoid.
17. Plaintiff was unable to work due to his thrombosed hemorrhoid from February 11, 2005 until May 24, 2005. While Dr. Duberman testified that it was unreasonable for Mr. Walters to be out of work for so long after his surgery, Dr. Morfesis believed, in his clinical judgment, *Page 6 
that plaintiff needed to stay out of work in order to avoid a recurrence of his thrombosed hemorrhoid.
18. The Full Commission gives greater weight to Dr. Morfesis' opinion regarding plaintiff's ability to work as Dr. Morfesis was the treating physician and performed the surgery excising plaintiff's thrombosed hemorrhoid, observing that plaintiff's condition was in danger of recurring and requiring additional surgical intervention, while Dr. Duberman never examined or treated plaintiff.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Compensation under the Workers' Compensation Act may be awarded for an occupational disease pursuant to N.C. Gen. Stat. § 97-53(13) if two conditions are met: (1) the disease must be "proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment;" and (2) the disease cannot be an "ordinary disease of life to which the general public is equally exposed outside of the employment. Booker v. Medical Center, 297 N.C. 458, 486,256 S.E. 2d 189, 196 (1979). The plaintiff bears the burden of proving the existence of an occupational disease. Gay v. J.P. Stevens Co., 79 N.C. App. 324, 331, 339 S.E. 2d 490, 494 (1986). In this case, plaintiff has shown that his thrombosed hemorrhoid is a compensable occupational disease. N.C. Gen. Stat. § 97-53(13).
2. As a result of his compensable occupational disease, plaintiff was totally disabled from February11, 2005 until May 24, 2005 and is entitled to disability benefits in the amount of *Page 7 
$703.44 per week during the period of his total disability, subject to the twenty-five (25%) attorney's fee awarded herein and subject to the stipulated seventy-five (75%) credit for Sickness Accident benefits paid during that period of time. N.C. Gen. Stat. §§ 97-2(9); 97-29;Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993).
3. Plaintiff is entitled to medical compensation for all related medical expenses incurred, or to be incurred, as a result of his compensable occupational disease. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff total disability compensation at the rate of $703.44 per week from February 11, 2005 until May 24, 2005. As all of this compensation has accrued, it shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in Paragraph 1 above is hereby approved to be deducted from the total disability compensation due plaintiff and paid directly to plaintiff's counsel.
3. After deduction of the attorney's fee awarded herein, defendants are entitled to take a credit in the amount of seventy-five (75%) of the Sickness Accident benefits paid to plaintiff against the remaining benefits owed to plaintiff, as stipulated to by the parties.
4. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as a result of his compensable occupational disease. *Page 8 
5. This Opinion and Award does not address or affect plaintiff's entitlement to any future periods of total disability or plaintiff's entitlement to elect disability benefits under N.C. Gen. Stat. §§ 97-30
or 97-31.
6. Defendants shall pay the costs.
This the 22nd day of January, 2008.
 S/______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1